**Dr. Roger HERNANDEZ, Appellant,**

v.

**BEXAR COUNTY NATIONAL BANK OF SAN ANTONIO, Appellee.**

No. 13–85–306–CV.

Court of Appeals of Texas, Corpus Christi.

April 17, 1986.

Rehearing Denied June 5, 1986.

Warren Weir, Weir & Alvarado, San Antonio, for appellant.

James R. Cliffe, Robert Etlinger, San Antonio, for appellee.

Before NYE, C.J., and BENAVIDES and KENNEDY, JJ.

## OPINION

BENAVIDES, Justice.

Republic Bank San Antonio, National Association (formerly Bexar County National Bank) sued Dr. Roger Hernandez on his contract to guarantee the repayment of loans made by the Bank to Lotus Southwest, Inc. Hernandez appeals the trial court's judgment in favor of the Bank and the court's denial of his counterclaim for fraud. The Bank cross-appeals for attorney's fees and interest. We reverse the judgment in favor of the bank, and affirm the remainder of the trial court's judgment.

Hernandez, Robert Smith, and R. Larry Thompson signed an agreement to guarantee the repayment of loans (up to $144,-900.00) to be made by the Bank to Lotus Southwest, Inc., a corporation formed by Smith to sell Lotus automobiles. Hernandez's liability, however, was specifically limited to "one-third (⅓) of the outstanding principal balance of the above amount."

Lotus Southwest defaulted on two notes totalling $78,520.00. The Bank then repossessed six Lotus automobiles, which represented the remaining collateral for the loans. The Bank and Thompson (one of the guarantors) worked out an arrangement for Thompson to pay two-thirds of the amount due. The Bank then released the collateral to Thompson and sued Hernandez for the remaining one-third of the amount due on the notes. Thompson eventually sold the automobiles for $21,500.00, which was credited to the balance due on the notes.

Hernandez denied liability and counterclaimed against the Bank for, among other things, fraud and impairment of collateral. At Hernandez's request, the court joined, as co-defendants, Smith, Thompson, Lotus Southwest, and Vance Graham (the Bank's officer who had been involved in the negotiations between the parties to the guaranty agreement). Hernandez then filed a third-party complaint against these four new parties, alleging fraud and contribution rights.

The case was tried before a jury. At the conclusion of the evidence, the court granted an instructed verdict denying Hernandez's claims against Smith, Graham, Thompson, and Lotus Southwest. The court's judgment on the verdict credited Hernandez with one-third of the sale price of the released collateral and gave the Bank judgment against Hernandez for $19,006.66 [one-third of ($78,520.00 minus $21,500.00)]. The Bank's request for attorney's fees and interest, which it claimed were due under the guaranty agreement, was denied.

Hernandez raises fourteen points of error on appeal. Some of these points are not argued or are scarcely argued, and either contain no authority or contain one or two authorities which are not on point.

■ Hernandez's fifth, sixth and seventh points of error are stated, restated and presented together with two short paragraphs which neither present nor direct argument nor contain any citation of authority. Points of error not supported by arguments and authorities are waived. See Leckey v. Warren, 635 S.W.2d 752, 753 (Tex.App.—Corpus Christi 1982, no writ) and authorities cited therein. We overrule Hernandez's fifth, sixth and seventh points of error.

Hernandez's second and eighth points are very similar. In his second point of error, Hernandez cites Tanenbaum v. Economics Laboratory, Inc., 628 S.W.2d 769 (Tex.1982), and asserts that the Bank impaired the collateral underlying the contract of guaranty by releasing the Lotus automobiles to Thompson. Hernandez apparently argues that since he did not receive notice of this disposition of the collateral, the Bank improperly "impaired" the collateral and so released Hernandez from his liability. However, in his eighth point of error, Hernandez complains of the trial court's granting a deficiency judgment because of the Bank's failure to give notice to him of its disposition of the repossessed collateral. He cites Tanenbaum for support of his second point, and both Tanenbaum and TEX.BUS. & COM.CODE ANN.

§§ 9.504, 9.505 (Vernon Supp.1986), for support of his eighth point. *Tanenbaum* is authority for the proposition that notice of disposition to the *debtor* must be given, under Section 9.504, before a creditor can sue for a deficiency. The Bank did not allege or prove that it provided notice of the sale of the secured items to Hernandez pursuant to Section 9.504(c). The Bank does not deny that it made a disposition of the collateral to Thompson without notice to Hernandez. It argues on appeal (as it did in its response to appellant's motion for judgment) that it did not sell the collateral, that the notice requirement of Section 9.504(c) does not extend to a guarantor, and that the contract of guarantee provided that the bank could release the collateral. The Bank cites *Roylex, Inc. v. E.F. Johnson Co.*, 617 S.W.2d 760 (Tex.Civ.App. —Houston [14th Dist.] 1981, no writ) and *Schubiger v. First Newport Realty Investors*, 601 S.W.2d 218 (Tex.Civ.App.—Dallas 1980, writ ref'd, n.r.e.). *Schubiger* involves realty and not consumer goods or collateral under TEX.BUS. & COMM. CODE ANN. Article 9. *Roylex* was decided before *Tanenbaum* and was expressly disapproved by *Tanenbaum*, 628 S.W.2d at 771.

■ Hernandez, as a guarantor of a secured transaction, is a debtor under Section 9.504, and suit is barred absent notice to the debtor. *Peck v. Mack Trucks, Inc.*, 704 S.W.2d 583 (Tex.App.—Austin, 1986, no writ); *Gentry v. Highlands State Bank*, 633 S.W.2d 590 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd). While the guarantee may have purported to waive notification, we agree with the reasoning of the Austin Court in *Peck* that a guarantor of a secured transaction may not waive his rights to notice of sale or disposition under Section 9.504 prior to default. Since the Bank did not give Hernandez notice of its intended disposition of the collateral, his eighth point of error is sustained. To the extent his second point of error tracks his eighth point, it too is sustained.[1]

■ Hernandez's eleventh point of error and part (e) [there is no part (d)] of his thirteenth point of error complain of the Bank's failure to introduce a balance sheet into evidence. In his eleventh point, Hernandez complains that the trial court failed to instruct the jury that no balance sheet existed when, during deliberations, the jury allegedly asked the trial court whether a balance sheet existed. Hernandez does not cite to the page in the record where the jury's question and the judge's answer can be found, nor are we able to find such an exchange; there is thus no error for us to address. In point of error number 13(e), Hernandez refers to an incident which supposedly occurred during closing argument, where the Bank's counsel allegedly referred to a nonexistent balance sheet. Appellant did not request the jury argument to be included in the record for this Court's review. He has therefore waived any error involving jury argument. *See Hydro-Line Manufacturing Co. v. Pulido*, 674 S.W.2d 382 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); TEX.R.CIV.P. 413. We overrule his eleventh point and part (e) of his thirteenth point.

■ Parts (a), (b) and (c) of Hernandez's thirteenth point of error assert three reasons why the trial court erred in admitting into evidence the two notes representing Lotus Southwest's debt to the Bank. In part (a), Hernandez argues that the notes were inadmissible because they were hearsay, because they amounted to a conclusion rather than being competent evidence, and because they denied him due process since notes cannot be cross-examined. He made none of these objections at trial but only objected on the ground that he had not received notice of the Bank's intent to introduce them. Hernandez may not raise on appeal objections not voiced at trial. *See, e.g., PGP Gas Products, Inc. v. Fariss*, 620

---

1. We note that the jury found the reasonable value of the remaining collateral (six Lotus vehicles) at the time of the Bank's foreclosure was $59,120.00; the jury found the actual sale price of the said vehicles was $21,500.00 when Smith and Thompson disposed of the vehicles pursuant to their agreement with the Bank.

S.W.2d 559 (Tex.1981); *O'Shea v. Corona-do Transmission Co.*, 656 S.W.2d 557 (Tex. App.—Corpus Christi 1983, writ ref'd n.r. e.). In any event, no error is shown. Part (b) argues that the Bank did not prove up its account by competent accounting evidence. Hernandez does not explain what he means by "competent accounting evidence" and does not cite any authority, except for a case dealing with summaries of voluminous records, which is not on point. Part (c) alleges that the trial court erred in not forcing the Bank to deliver its entire file to Hernandez. The court did, however, grant Hernandez's request that the Bank turn over to him everything it had in its file concerning the notes, and the Bank's attorney testified that he complied with that order. We find no indication that the Bank violated the order. We overrule Hernandez's thirteenth point of error.

Hernandez's first point of error alleges that the Bank released the co-guarantors, thereby also releasing him. Thompson satisfied his guaranty by signing a note payable to the Bank for two-thirds of the amount due and owing, which is not a "release" of Thompson, and the Bank was suing Smith and Lotus Southwest, on Smith's obligation, in a separate lawsuit. Thus, there is simply no evidence of any release. Moreover, under TEX.R. CIV.P. 94, Hernandez had the burden of pleading his defense of release. He pled "accord and satisfaction" instead. Under TEX.R.CIV.P. 279, Hernandez was also required to submit requested jury issues concerning the issue of release, which he did not. By neither pleading, nor proving, nor requesting jury issues on the question of release, Hernandez has waived that defense. His first point of error is overruled.

Hernandez's third and fourth points of error involve certain representations made to him by the Bank's officer, Vance Graham, which Hernandez alleges amounted to fraud in the inducement. Hernandez testified that Graham induced him to sign the guaranty agreement by informing him of an agreement between the Bank and the supplier of the cars for the supplier to repurchase any unsold Lotus automobiles, at the end of one year, for 80% of their invoice cost. Therefore, Hernandez testified, he thought his liability in case of default by Lotus Southwest on its notes to the Bank would be limited to one-third of 20% of the principal due on the notes, instead of one-third of the whole amount, because the Bank would have already recouped 80% of the loss. For some reason, the supplier did not repurchase the unsold automobiles, and therefore the Bank eventually recovered less than 80% of their cost. Nothing is mentioned in the guaranty contract concerning a buy-back arrangement, although some evidence of one appears in the record.

Contrary to Hernandez's assertion, the jury did not find that the Bank or Graham acted fraudulently. In answer to issues number three and four, the jury found that Vance Graham, acting for the Bank, did *represent* to Hernandez that the Bank's floor plan procedures and the 80% repurchase agreement would limit Hernandez's liability under the guaranty agreement, and that Hernandez relied upon that representation. However, in answer to the ninth special issue, the jury found that the Bank made no *misrepresentations* to Hernandez. In other words, the Bank did not lie to Hernandez or wrongfully mislead him. Hernandez merely made a business decision when he signed the guaranty; he took the risk along with the Bank that the supplier would not buy back the automobiles. We overrule his third and fourth points of error.

Hernandez's ninth point of error involves the Bank's renewal of several of Lotus Southwest's notes. He cites only TEX.BUS. & COM.CODE ANN. Section 3.118 (Vernon 1968). That section deals with the construction of instruments, defined as negotiable instruments under Section 3.102(a)(5) of the Code. The guaranty contract does not meet the test of negotiability set out in Section 3.104(a), however, so § 3.118 is inapplicable. Moreover, Hernandez's contract of guaranty provides, "This guaranty is a continuing one and

shall continue to apply without regard to the form or amount of the indebtedness or obligation hereby guaranteed, which [the Bank] may create, *renew*, extend or alter, in whole or in part, *without notice* to [the guarantors]." (Emphasis added.) Hernandez specifically waived any right to notice from the Bank of its renewal of the notes.[2] We overrule his ninth point of error.

■ In his tenth point of error, Hernandez asserts that the trial court erred in not entering judgment for him on his counterclaim against the Bank. The Bank originally pled that Hernandez violated the Deceptive Trade Practices Act [currently found in TEX.BUS. & COM.CODE ANN. §§ 17.41—17.63 (Vernon Supp.1986)]. The Bank dropped this allegation in its amended petition. Hernandez asserts that the Bank's DTPA claim was groundless and brought in bad faith, and that he is therefore entitled to treble damages under the DTPA (apparently under Section 17.50 as it existed before its 1979 amendment).

Having neither pled nor proved a violation of the DTPA by the Bank, Hernandez may not assert such a violation on appeal. Nor did Hernandez prove the common law theories of fraud which he pled, since the jury found that the Bank did not make any misrepresentations to him, and assessed his damages at zero. Nor was Hernandez entitled to attorney's fees, since his counterclaim was unsuccessful. [Hernandez presents no appeal requesting attorney's fees for the defense of the deficiency action brought by the Bank.] We overrule appellant's tenth point of error.

By his twelfth point of error, Hernandez alleges that the court erred in dismissing his cross-actions against the other co-guarantors, and in not forcing the Bank to sue the primary obligor (the debtor, Lotus Southwest) before suing Hernandez. *See* TEX.CIV.PRAC. & REMS.CODE ANN. § 17.001 (Vernon 1986); TEX.R.CIV.P. 31.

■ The contract of guaranty signed by Hernandez, Smith and Thompson provides, "It shall not be necessary to institute suit on any indebtedness before proceeding against the guarantor[s]." Such a waiver is valid and enforceable. *See Wilson v. Industrial Leasing Corp.*, 689 S.W.2d 496, 498 (Tex.App.—Houston [1st Dist.] 1985, no writ); *Yandell v. Tarrant State Bank*, 538 S.W.2d 684, 687–88 (Tex.Civ.App.— Fort Worth 1976, writ ref'd n.r.e.). We overrule his twelfth point of error.

Hernandez's fourteenth point of error asserts that the trial court erred in not granting judgment for Hernandez based on allegations made by the Bank in its separate lawsuit against Smith and Lotus Southwest. Hernandez contends the pleadings in that other suit amounted to admissions requiring judgment in his favor. Hernandez does not indicate which statements he feels to be admissions, but he seems to re-argue his twelfth point of error, which we overruled. We accordingly overrule his fourteenth and final point of error.

The Bank brings two cross-points, alleging that the trial court erred in not awarding attorney's fees and prejudgment interest to the Bank. Because of our disposition of appellant's eighth point of error we need not address the bank's cross-points.

The part of the judgment of the trial court awarding judgment against appellant Hernandez is REVERSED and RENDERED and appellee bank is to take nothing from appellant; that part of the trial court's judgment denying the Bank attorney's fees and Hernandez's cross-action is AFFIRMED.

---

**2.** We note that the waiver here involves renewal of the Lotus notes and is not to be confused with a waiver of notice of sale or disposition of collateral before default under Section 9.505, which waiver of notice of sale or disposition we found ineffective in deciding appellant's eighth point of error.